RONALD S. KRAVITZ, ESQ., CA #129704
**SHEPHERD FINKELMAN MILLER & SHAH, LLP**
201 Filbert Street, Suite 201
San Francisco, California  94133
Tel:  (415) 429-5272
Fax:  (866) 300-7367
rkravitz@sfmslaw.com

G. MARK ALBRIGHT, ESQ. *(Pro hac vice to be submitted)*
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada  89106
Tel:  (702) 384-7111
Fax:  (702) 384-0605
gma@albrightstoddard.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOSE RUN, LLC,<br><br>             Plaintiff,<br><br>vs.<br><br>RENATO LIBRIC, individually; and DOES I THROUGH 10,<br><br>             Defendant. | CASE NO.:   3:19-cv-1879<br><br>**COMPLAINT** |

**COMES NOW**, Plaintiff, MOOSE RUN, LLC, by and through counsel, for their Complaint against Defendant, states as follows:

## JURISDICTION

1.      Plaintiff Moose Run, LLC is a Wyoming Limited Liability Company, with its principal place of business in Las Vegas, Nevada, and Office in Clark County, Nevada.

2.      Upon information and belief, Defendant Renato Libric is a citizen of Croatia, but is also a resident of California. Mr. Libric is the majority shareholder and the Chief Executive Officer of Bouxtie, Inc. a Delaware Corporation with offices in Redwood City, California at 1001 Marshall Street.

COMPLAINT

3. Defendant Does 1 through 10 are entities and individuals whose identity is currently unknown to Plaintiff, but who are liable to Plaintiff for the actions and claims, as set forth below. The true names of those defendants will be substituted for their Doe names once determined.

4. This Court has jurisdiction pursuant to 28 U.S.C. 1332 because the amount in controversy exceeds $75,000.00 and diversity of citizenship exists between Plaintiff and Defendant.

5. This Court has jurisdiction pursuant to 28 U.S.C. 1331, 1367 because this action arises under the laws of the United States, more particularly 28 U.S.C. 1964, and therefore there is federal jurisdiction.

6. Personal jurisdiction exists and venue is proper in this district because Defendant is domiciled in the State of California.

## BACKGROUND FACTS

7. In July 2017, Erica Lill, an employee of Keiretsu Forum / Keiretsu Capital, a successful venture investment banker, contacted Moose Run, LLC regarding an opportunity to invest in Bouxtie, Inc., a three-year start up technology company based in various locations in Silicon Valley, California.

8. Shortly thereafter Erica Lill connected Moose Run, LLC to Defendant Renato Libric at a Keiretsu Forum meeting.

9. Defendant, Renato Libric, reached out to Plaintiff for the purpose of seeking additional financing for Bouxtie, Inc.

10. Defendant Renato Libric held himself out to Plaintiff, and represented to Plaintiff, that he was a successful businessman and a lucrative business opportunity could be available to Plaintiff should they make an investment.

11. In August 2017, Libric represented to Moose Run, LLC that there was over $5,000,000 committed in Series B preferred stock but had availability for up to $10,000,000 and the closing was imminent.

12. Libric, through Erica Lill, provided Plaintiff with a presentation packet which included an expression of interest for purchase of Bouxtie, Inc. from First Data Corporation, a large public company, at a price of $150,000,000. A further expression of interest was presented from

Mastercard, Inc. That letter suggested a price of $300,000,000. Both documents were Docusigned by the Plaintiff and were later found to be forgeries.

13. Libric emailed to Moose Run, LLC a Note Purchase Agreement and an Unsecured Convertible Note Agreement for this transaction. He also sent copies of Term Sheets for Series B preferred stock commitments totaling $10,000,000 Docusigned and dated August 3, 3017, which were later found to be forgeries.

14. Libric also emailed to Moose Run, LLC a copy of an August 2017 bank statement showing a bank balance of $2,175,574.87. Plaintiff has confirmation that the bank statement was altered to show at least $2,000,000 more than what was actually in the account which amount has been embezzled by Libric.

15. Based upon Libric's representations, Plaintiff agreed to enter into various agreements to invest in Bouxtie, Inc., an entity that Libric is the controlling shareholder and Chief Executive Officer.

16. Pursuant to the agreements entered into between Plaintiffs and Defendants, Plaintiff agreed to invest a total amount of $1,500,000.00. All documents were signed and said funds were wired from Nevada into the Bouxtie, Inc. bank account at Silicon Valley Bank at Libric's direction.

17. David Lipson was to become a Director for Bouxtie, Inc. A forged, Docusigned, Corporate Resolution, executed by all Directors was provided to support the entire transaction.

18. On October 13, 2017, final documents for the investment into Bouxtie, Inc. of $1,500,000.00 were executed between Moose Run, LLC and Renato Libric on behalf of Bouxtie, Inc.

19. Throughout his interactions with Plaintiff, Libric represented himself as extensively trained and experienced in finance including financing of businesses through banks and other financing sources. He also represented himself as a highly experienced technology sales person.

20. Plaintiff relied upon Libric's explicit representations of pending contracts with customers, other investors, bank statements, and corporate resolutions. Plaintiff signed the following documents: Note Purchase Agreement, Unsecured Convertible Note, Stock Purchase Agreement and Supplemental Agreement, attached hereto as Exhibits "1," "2," "3," and "4" respectively.

21. Libric provided to Moose Run, LLC a forged, Docusigned entirely by Plaintiffs, Corporate Resolution from the Board of Directors approving Moose Run, LLC's investment, attached hereto as Exhibit "5."

22. Thereafter, Libric represented that the Series B had closed and sent Moose Run, LLC an authorized stock certificate for 947,059 shares of Bouxtie, Inc., attached hereto as Exhibit "6." While the stock certificate is valid, signatures are forged, and the issuance was never authorized.

23. Bouxtie's Board of Directors was not aware of any part of this investment transaction.

24. In February 2018, Moose Run's principals, representatives, and/or agents reported Defendants' conduct to the Las Vegas Metropolitan Police Department ("LVMPD"). Upon information and belief, LVMPD prepared a report and referred the matter to the Redwood City Police Department ("RCPD"). Upon information and belief, the RCPD referred this matter to the local office of the Federal Bureau of Investigation ("FBI") because the RCPD does not have a financial crimes unit. On May 10, 2018, Libric was arrested based on a federal grand jury indictment for forging signatures on documents to carry out the fraud. Libric remains in federal custody.

25. Renato Libric, the former Chief Executive Officer of Bouxtie, Inc., was sentenced to 36 months in prison for wire fraud, announced United States Attorney Alex G. Tse and Federal Bureau of Investigation Special Agent in Charge John F. Bennett in a December 19, 2018 press release. The sentence was handed down by the Honorable Maxine M. Chesney, United States District Judge.

26. Libric, 39, of Redwood City, Calif., and Zagreb, Croatia, pleaded guilty to the wire fraud charge on September 5, 2018, in the Northern District of California. According to his plea agreement, Libric admitted that from August 2017 through February 2018, he devised and carried out a scheme to defraud potential investors in Bouxtie, Inc., a Delaware corporation based in the San Francisco Bay Area.

27. Libric admitted that an essential purpose of the scheme was to overstate the financial condition and prospects of Bouxtie, and to induce potential investors to believe Libric had authority to sell shares in Bouxtie to investors.

28. Libric took multiple steps to convince members of a Las Vegas-based company to invest over a million dollars in Bouxtie. As part of the scheme, Libric fraudulently suggested to representatives of the potential investors that a large publicly traded corporation was interested in purchasing Bouxtie at a price of $150 million.

29. To bolster this claim, Libric admitted that he fraudulently placed the signature of an executive with the alleged purchasing corporation on a forged Term Sheet. The Term Sheet purported to indicate the large corporation was interested in the purchase of Bouxtie.

30. In addition, Libric caused the falsified Term Sheet and a falsified bank statement to be transmitted to potential investors. The false bank statement suggested Bouxtie had a balance of over $2,000,000 in an account when, in fact, there was only $7,642.82 in the account.

31. Furthermore, Libric placed the signatures of members of Bouxtie's Board of Directors on a document that purported to authorize Libric to enter into agreements pursuant to which the investors would lend $1.5 million to Bouxtie and that the loan eventually would be converted into shares of Bouxtie.

32. As a result of his scheme, Libric convinced Plaintiff to transfer $1.5 million into accounts belonging to Bouxtie. Further, after the $1.5 million was deposited, Libric withdrew more than $130,000 of the invested funds from an account and put the funds into his own checking account, and paid $200,000 to Lill.

33. On May 10, 2018, a federal grand jury indicted Libric, charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343 and 2.

34. In September, Libric pleaded guilty to the fraud charge and agreed to make restitution to the victims for their losses.

35. In addition to the prison term, Judge Maxine M. Chesney, of the Northern District of California, also sentenced the Defendant Libric to a three-year period of supervised release and ordered him to pay over $1,500,000 in restitution to Plaintiff herein. (*See*, Dept. of Justice press release dated December 19, 2018.)

///

///

36. In March of 2019, Libric requested a transfer to a prison in Mexico, falsely claiming he was a Mexican national, when in fact he admitted previously in his sentencing briefs to be a National of Croatia.

# FIRST CAUSE OF ACTION
## (FRAUD/FALSE PROMISE)

37. Paragraphs 1 through 36 are incorporated as though fully set forth herein.

38. Defendant made promises to Plaintiff, or its agents, subsidiaries and affiliates, that Defendant would invest $1,500,000 into Bouxtie, Inc. in a convertible note and that those funds would either be paid back with interest in 2019 or converted into stock based upon the terms of the Note Purchase Agreement, Unsecured Convertible Note, Stock Purchase Agreement and Supplemental Agreement. *See* Exhibits "1", "2", "3", and "4".

39. Defendant further promised to ensure that Moose Run, LLC's representative David E. Lipson would be appointed to Bouxtie, Inc.'s board of directors.

40. At the time Defendant made the above described promises to Plaintiff, the Defendant did not intend to perform.

41. The false promises made by Defendant to Plaintiff or subsidiaries and affiliates of Plaintiff were false and were carried out for the purpose of defrauding Plaintiff.

42. Defendant knew that the representations made to Plaintiff were false.

43. Defendant's representations to Plaintiff or subsidiaries or affiliates of Plaintiff, regarding the financial state of Bouxtie, Inc. and future contracts, were made with the intent to induce Plaintiff and subsidiaries and affiliates of Plaintiff to rely on such promises and act accordingly by paying the Defendant money.

44. Defendant made the false representations over the phone, in person, in meetings, and over electronic mail.

45. Plaintiff was ignorant of the falsity of Defendant's representations and unaware of Defendant's intention not to perform. Plaintiff's due diligence provided no notice of Defendant's lack of intention to perform.

///

46. Plaintiff relied on the truth of Defendant's representations regarding the investment and Defendant's promise to perform.

47. Plaintiff relied on the due diligence of Keiretsu Capital and Keiretsu Forum in recommending Bouxtie as a possible investment as well as introducing Plaintiff to Defendant at a Keiretsu Forum meeting.

48. Plaintiff was justified in relying on Defendant's representations.

49. As a result of Plaintiff's reliance on Defendant's representations, Plaintiff suffered injury and damages through the payment of money either directly or from affiliates or subsidiaries of Plaintiff paid on Plaintiff's behalf without receiving the benefits represented by Defendant.

50. Plaintiff has been required to hire attorneys to bring this action for damages and is entitled to recover reasonable attorney fees and costs incurred in doing so.

## SECOND CAUSE OF ACTION
## (RACKETEERING)

51. Paragraphs I through 50 are incorporated as though fully set forth herein.

52. Defendant entered into agreements with Plaintiff, utilizing interstate and foreign commerce to convince Plaintiff to lend $1,500,000.00 to Bouxtie, Inc. and then use the funds for Defendant instead.

53. Defendant had no intention to perform on the contracts entered into with Plaintiff.

54. An enterprise existed, and Defendant's actions amount to conduct of the enterprise through a knowing and willful pattern of fraud and racketeering activity in violation of 18 U.S.C. 1962.

55. The Plaintiff was damaged as a proximate result of this pattern and racketeering activity.

56. The Plaintiff is entitled to recover general, special, and exemplary damages from the Defendant.

57. The Plaintiff has been required to hire attorneys to bring this action for damages and is entitled to recover reasonable attorney fees and costs incurred in doing so.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

58. Paragraphs 1 through 57 are incorporated as though fully set forth herein.

59. Defendant agreed to provide Plaintiff with either repayment of the loan with interest or stock in Bouxtie, Inc. in exchange for Plaintiff's payment of money which was provided by Plaintiff or by affiliates or subsidiaries of Plaintiff on Plaintiff's behalf.

60. Plaintiff fully performed under the terms of its agreements with Defendant by loaning $1,500,000.00 to Bouxtie, Inc. which Defendant used entirely for his own purposes and not as agreed.

61. Defendant breached its contract with Plaintiff by diverting the loan funds into fraudulent activities and by not either paying back said loan or providing Plaintiff with valid stock in Bouxtie, Inc.

62. As a result of the actions of the Defendant, the Plaintiff was damaged and is entitled to general and special damages.

63. The Plaintiff has been required to hire attorneys to bring this action for damages and is entitled to recover reasonable attorney fees and costs incurred in doing so.

### FOURTH CAUSE OF ACTION

### (GOOD FAITH AND FAIR DEALING)

64. Paragraphs 1 through 63 are incorporated as though fully set forth herein.

65. Defendant owed Plaintiff duties pursuant to the covenant of good faith and fair dealing, which arise from every contract.

66. Defendant breached the duty it owed to Plaintiff by misrepresenting to Plaintiff the financial position of Bouxtie, Inc., the authority Defendant had in the transaction, and that Plaintiff would receive stock in Bouxtie, Inc. and by failing or refusing to provide Plaintiff with the stock for which Plaintiff paid or was paid by affiliates or subsidiaries of Plaintiffs on Plaintiff's behalf.

67. Defendant gained an advantage to Plaintiff's prejudice by accepting and refusing to refund payments of money from Plaintiff, and Defendant failed or refused to perform, or never intended to perform.

68. As a result of the actions of the Defendant, the Plaintiff was damaged and is entitled to general and special damages.

69. The Plaintiff has been required to hire attorneys to bring this action for damages and is entitled to recover reasonable attorney fees and costs incurred in doing so.

## FIFTH CAUSE OF ACTION
### (CONVERSION)

70. Paragraphs 1 through 69 are incorporated as though fully set forth herein.

71. In the alternative, if it is determined that Plaintiff and any Defendant did not have an enforceable agreement, then Defendant has exercised unauthorized dominion over funds belonging to Plaintiff, which Plaintiff paid to finance Bouxtie, Inc. and to become a shareholder in Bouxtie, Inc.

72. Plaintiff has the right of possession for the funds, and Defendant's failure or refusal to refund or return the compensation paid by Plaintiff has resulted in damages to Plaintiff and conversion on the part of the Defendant.

73. As a result of the actions of the Defendant, the Plaintiff was damaged and is entitled to general and special damages.

74. The Plaintiff has been required to hire attorneys to bring this action for damages and is entitled to recover reasonable attorney fees and costs incurred in doing so.

## SIXTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

75. Paragraphs 1 through 74 are incorporated as though fully set forth herein.

76. In the alternative, if it is determined that Plaintiff and any Defendant did not have an enforceable agreement then Defendant has been unjustly enriched

77. Plaintiff provided, directly or through its agents, affiliates or subsidiaries, Defendant with money for investment in Bouxtie, Inc.

78. Defendant failed or refused to perform the investment in Bouxtie, Inc. that Plaintiff or their affiliates or subsidiaries paid for, and Defendant has obtained the money paid by Plaintiff or on behalf of Plaintiff unjustly and without Plaintiff receiving any benefit.

79. As a result of the actions of the Defendant, the Plaintiff was damaged and is entitled to general and special damages.

80. The Plaintiff has been required to hire attorneys to bring this action for damages and is entitled to recover reasonable attorney fees and costs incurred in doing so.

## SEVENTH CAUSE OF ACTION

## (FRAUDULENT TRANSFERS)

81. Paragraphs 1 through 80 are incorporated as though fully set forth herein.

82. Defendant transferred funds procured from Plaintiff to Bouxtie with actual intent to hinder, delay or defraud Plaintiff.

83. On information and belief, Defendant has otherwise concealed or absconded with Plaintiff's fraudulently obtained funds.

**WHEREFORE**, Plaintiff prays for relief against Defendant as follows:

1. That Plaintiff be awarded general and special damages in an amount to be proven at trial against Defendant.
2. That Plaintiff be awarded threefold the damages it sustained and the cost of this lawsuit, including reasonable attorney's fees, pursuant to 18 U.S.C. 1964(C);
3. That Plaintiff be awarded punitive and exemplary damages.
4. That Plaintiff be awarded costs of this action, and reasonable attorney's fees; and
5. For such other and further relief as this Court deems just and proper.

///
///
///
///
///
///
///

1  DATED April 8, 2019

2                           **SHEPHERD FINKELMAN MILLER & SHAH, LLP**

/s/ Ronald S. Kravitz
RONALD S. KRAVITZ (SBN 129704)
201 Filbert Street, Suite 201
San Francisco, California 94133
Tel: (415) 429-5272
Fax: (866) 300-7367
rkravitz@sfmslaw.com

G. MARK ALBRIGHT, ESQ.
*(Pro hac vice to be submitted)*
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
Tel: (702) 384-7111
Fax: (702) 384-0605
gma@albrightstoddard.com

*Attorneys for Plaintiff*