1  RONALD S. KRAVITZ, ESQ., (SBN 129704)
   **SHEPHERD FINKELMAN MILLER & SHAH, LLP**
2  201 Filbert Street, Suite 201
   San Francisco, California  94133
3  Tel:  (415) 429-5272
   Fax:  (866) 300-7367
4  rkravitz@sfmslaw.com

5
   G. MARK ALBRIGHT, ESQ. *(Pro hac vice)*
6  **ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
   801 South Rancho Drive, Suite D-4
7  Las Vegas, Nevada  89106
   Tel:  (702) 384-7111
8  Fax:  (702) 384-0605
   gma@albrightstoddard.com
9

10 *Attorneys for Plaintiff*

11                    **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13
   | MOOSE RUN, LLC, | CASE NO.:   3:19-cv-01879-MMC |
   |---|---|
   | Plaintiff, | |
   | vs. | **DECLARATION OF NATALIE LIM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT RENATO LIBRIC** |
   | RENATO LIBRIC, individually; and DOES I THROUGH 10, | |
   | Defendant. | |

28           DECLARATION OF NATALIE LIM IN SUPORT OF PLAINTIFF'S MOTION FOR
                                    SUMMARY JUDGMENT

# SWORN DECLARATION OF NATALIE LIM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT

NATALIE LIM, under penalty of perjury, declares and states as follows:

1. At all times pertinent hereto, I was and am an Executive of Plaintiff Moose Run, LLC, which is a Wyoming Limited Liability Company, with its principal place of business in Las Vegas, Nevada, and office in Clark County, Nevada. I am over the age of eighteen years and have personal knowledge concerning this matter, and am competent and willing to testify in court of the same if necessary.

2. Defendant Renato Libric is a citizen of Croatia, but is also a resident of California. Based on documents we received Mr. Libric was or at least held himself out to be the majority shareholder and the Chief Executive Officer of Bouxtie, Inc. a Delaware Corporation with offices in Redwood City, California at 1001 Marshall Street.

3. In July 2017, Erica Lill, an employee of Keiretsu Forum / Keiretsu Capital, a successful venture investment banker, contacted Moose Run, LLC regarding an opportunity to invest in Bouxtie, Inc., a three-year start up technology company based in various locations in Silicon Valley, California.

4. Shortly thereafter Erica Lill connected Moose Run, LLC to Defendant Renato Libric at a Keiretsu Forum meeting. Defendant, Renato Libric, reached out to David Lipson and me for the purpose of seeking additional financing for Bouxtie, Inc. Defendant Renato Libric held himself out to me and David Lipson, and represented to me, that he was a successful businessman and a lucrative business opportunity could be available to Plaintiff should they make an investment.

5. In August 2017, Libric represented to David Lipson and me that there was over $5,000,000 committed in Series B preferred stock but had availability for up to $10,000,000 and the closing was imminent.

6. Libric provided David Lipson and me with a presentation packet which included an expression of interest for purchase of Bouxtie, Inc. from First Data Corporation, a large public

company, at a price of $150,000,000. A further expression of interest was presented from Mastercard, Inc. That letter suggested a price of $300,000,000. Both documents were Docusigned by the Plaintiff and were later found by federal prosecutors to be forgeries.

7.  Libric emailed to Moose Run, LLC a Note Purchase Agreement and an Unsecured Convertible Note Agreement for this transaction. He also sent David Lipson and our team copies of Term Sheets for Series B preferred stock commitments totaling $10,000,000 Docusigned and dated August 3, 3017, which were later found to be forgeries.

8.  Libric also emailed to Moose Run, LLC a copy of an August 2017 bank statement showing a bank balance of $2,175,574.87. Plaintiff and federal prosecutors confirmed later that the bank statement was altered to show at least $2,000,000 more than what was actually in the account which amount has been embezzled by Libric.

9.  Based upon Libric's false representations, Plaintiff Moose Run agreed to enter into various agreements to invest in Bouxtie, Inc., an entity of which Libric was the controlling shareholder and its Chief Executive Officer.

10. Pursuant to the agreements entered into between Plaintiffs and Defendants, Plaintiff Moose Run agreed to invest a total amount of $1,500,000.00 with Libric's company. All documents were signed and said funds were wired from Nevada into the Bouxtie, Inc. bank account at Silicon Valley Bank at Libric's direction.

11. David Lipson was to become a Director for Bouxtie, Inc. A Docusigned Corporate Resolution executed by all Directors was provided to Plaintiff Moose Run to support the entire transaction. Federal prosecutors later determined that the corporate resolution was a forgery.

12. On October 13, 2017, final documents for the investment into Bouxtie, Inc. of $1,500,000.00 were executed between Moose Run, LLC and Renato Libric on behalf of Bouxtie, Inc. Throughout his interactions with Plaintiff, Libric represented himself to our team at Moose Run as extensively trained with sophisticate experience in finance including financing of businesses through banks and other financing sources.

13. Libric also represented himself to our Moose Run team as a highly experienced technology sales person. David Lipson and I relied upon Libric's explicit representations of pending contracts with customers, other investors, bank statements, and corporate resolutions.

14. In reliance on Libric's fraudulent scheme, David Lipson signed on behalf of Plaintiff the following documents: Note Purchase Agreement, Unsecured Convertible Note, Stock Purchase Agreement and Supplemental Agreement, attached hereto as **Exhibits "1," "2," "3," and "4"** respectively.

15. Libric provided to Moose Run, LLC a forged, Docusigned entirely by Plaintiffs, Corporate Resolution from the Board of Directors approving Moose Run, LLC's investment, attached hereto as **Exhibit "5."**

16. Thereafter, Libric represented to me that the Series B had closed and sent Moose Run, LLC an authorized stock certificate for 947,059 shares of Bouxtie, Inc., attached hereto as **Exhibit "6."** While the stock certificate is valid, the signatures are forged, and the issuance was never authorized. David Lipson and I were later informed that Bouxtie's Board of Directors was not aware of any part of this investment scheme perpetrated by Libric.

17. In February 2018, Moose Run's principals reported Defendants' conduct to the Las Vegas Metropolitan Police Department ("LVMPD").  Upon information and belief, LVMPD prepared a report and referred the matter to the Redwood City Police Department ("RCPD"). Upon information and belief, the RCPD referred this matter to the local office of the Federal Bureau of Investigation ("FBI") because the RCPD does not have a financial crimes unit.

18. On May 10, 2018, Libric was arrested based on a federal grand jury indictment for forging signatures on documents to carry out the fraud.  Libric pled guilty to wire fraud charges on September 5, 2018. Libric currently remains in federal custody after his sentencing. (See Department of Justice press release dated December 19, 2018, attached hereto as **Exhibit "7."**

19. Libric, the former Chief Executive Officer of Bouxtie, Inc., was sentenced to 36 months in federal prison for wire fraud by United States District Judge Maxine M. Chesney,

20. According to his plea agreement, Libric admitted that from August 2017 through February 2018, he devised and carried out a scheme to defraud potential investors in Bouxtie, admitting that an essential purpose of the scheme was to overstate the financial condition and prospects of Bouxtie, and to induce potential investors to believe Libric had authority to sell shares in Bouxtie to investors.

21. Libric took multiple steps to convince Moose Run to invest $1.5 million dollars in Bouxtie. As part of the scheme, he fraudulently suggested to David Lipson and me that a large publicly traded corporation was interested in purchasing Bouxtie at a price of $150 million.

22. To bolster this claim, Libric admitted that he fraudulently placed the signature of an executive with the alleged purchasing corporation on a forged Term Sheet. The Term Sheet purported to indicate that the large corporation was interested in the purchase of Bouxtie. In addition, Libric caused the falsified Term Sheet and a falsified bank statement to be transmitted to our team. The false bank statement suggested Bouxtie had a balance of over $2,000,000 in an account when, in fact, there was only $7,642.82 in the account.

23. Furthermore, Libric placed the signatures of members of Bouxtie's Board of Directors on a document that purported to authorize Libric to enter into agreements pursuant to which the investors would lend $1.5 million to Bouxtie and that the loan eventually would be converted into shares of Bouxtie.

24. As a result of his scheme, Libric convinced our team at Moose Run to transfer $1.5 million into accounts belonging to Bouxtie.

25. On May 10, 2018, a federal grand jury indicted Libric, charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343 and 2. In September, Libric pleaded guilty to the federal fraud charge and agreed to make restitution to the victims for their losses in Case No. 3:18-cr-00196-001-MMC.

26. In addition to the prison term, Judge Chesney also sentenced Libric to a three-year period of supervised release and ordered him to pay over $1.5 million in restitution to Plaintiff herein.

27. In March of 2019, it was noted in Court documents that Libric requested a transfer to a prison in Mexico, falsely claiming he was a Mexican national, when in fact he admitted previously in his sentencing briefs to be a National of Croatia. *See* "Judgment in a Criminal Case," Case No. 3:18-cr-00196-001-MMC, attached hereto as **Exhibit "8,"** "Criminal Minutes," Case No. 3:18-cr-00196-001 MMC, attached hereto as **Exhibit "9,"** and "Notice of Related Case; and Notice of Defendant's Guilty Plea and Conviction in Related Criminal Case," Case No. 2:18-cv-00425-GMN-NJK, attached hereto as **Exhibit "10."**

28. Defendant Libric is not in the military service of the United States, nor is he an infant or incompetent person.

I declare, under the laws of the United States and the State of Nevada, that the foregoing is true and correct.

Further affiant sayeth naught.

DATED __10th__ of December, 2019.

_____
NATALIE LIM