IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOSE RUN, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RENATO LIBRIC,<br><br>　　　　Defendant. | Case No. 19-cv-01879-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Doc. No. 46 |

Before the Court is plaintiff Moose Run, LLC's ("Moose Run") Motion for Summary Judgment, filed December 13, 2019, whereby Moose Run seeks summary judgment as to all claims alleged in its complaint against defendant Renato Libric ("Libric").[1] On March 11, 2020, Libric, who proceeds pro se, filed opposition, which he supplemented on March 25, 2020. On April 30, 2020, Moose Run filed its reply. Having read and considered the parties' respective written submissions, the Court rules as follows.[2]

## BACKGROUND

**A. Moose Run's Complaint**

In its complaint, Moose Run alleges that, in July 2017, it was contacted by an investment banker "regarding an opportunity to invest in Bouxtie, Inc. ['Bouxtie']," a "start up technology company based in various locations in Silicon Valley, California," and that said banker "connected" Moose Run to Libric (see Compl. ¶¶ 7, 8); Libric, "the majority

---

[1] Libric has filed a counterclaim, which pleading is not the subject of the instant motion.

[2] By order filed March 6, 2020, the Court advised the parties it would take the matter under submission as of the date on which Moose Run filed its reply.

shareholder and the Chief Executive Officer of Bouxtie," then "reached out" to Moose Run "for the purposes of seeking additional financing for Bouxtie." (See Compl. ¶¶ 2, 9.)

According to Moose Run, Libric, for the purpose of inducing Moose Run to invest in Bouxtie: (1) "fraudulently suggested to [Moose Run] that a large publicly traded corporation," specifically, First Data Corporation, "was interested in purchasing Bouxtie at a price of $150 million," and, "[t]o bolster this claim," "fraudulently placed the signature of an executive with [First Data Corporation] on a forged Term Sheet" that "purported to indicate [First Data Corporation] was interested in the purchase of Bouxtie" (see Compl. ¶¶ 12, 28); (2) provided Moose Run "an August 2017 bank account statement" for Bouxtie that he had "altered" to show a "balance of $2,175,574.87," when, "in fact, the balance in Bouxtie's account at that time was $7,642.82" (see Compl. ¶¶ 14, 30); and (3) gave Moose Run a "forged" document titled "Corporation Resolution of Bouxtie, Inc.," in which the Board of Directors of Bouxtie purportedly agreed to allow Libric to cause Moose Run to enter into a series of agreements with Bouxtie, whereby Moose Run would lend Bouxtie the sum of "$1,500,00 at an interest rate of 3.5% and allow for [a] Note to convert to shares equaling no less than 3.99% of [Bouxtie] at the time of conversion" (see Compl. ¶ 21, Ex. 5).

Moose Run alleges it thereafter invested the sum of $1,500,000 in Bouxtie (see Compl. ¶¶ 15-16, 18), and that Libric subsequently was indicted for and convicted of "wire fraud" (see Compl. ¶¶ 33-34).

Based on the above allegations, Moose Run asserts seven Causes of Action, specifically, (1) a state law claim for "Fraud/False Promise," (2) a federal claim for "Racketeering" under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and five additional state law claims for, respectively, (3) "Breach of Contract," (4) "Good Faith and Fair Dealing," (5) "Conversion," (6) "Unjust Enrichment," and (7) "Fraudulent Transfers."

//
//

**B. Criminal Case Against Libric**[3]

On May 10, 2018, Libric was indicted on one count of wire fraud, which count was based on the allegation that Libric engaged in a fraudulent scheme to cause, and did cause, Moose Run to engage in an "interstate wire transmission" of $1,500,000 to Bouxtie. (See United States v. Libric, CR 18-00196, Indictment, Doc. 1, ¶¶ 10, 15.)

On September 5, 2018, Libric, pursuant to a Plea Agreement, pleaded guilty. In his Plea Agreement, he "agreed to pay restitution" to Moose Run "in the amount of no less than $1,500,000. (See United States v. Libric, Plea Agreement, Doc. No. 17, at 6:18-21, 23-24).

The Plea Agreement includes a number of admissions by Libric. In particular, Libric admitted he "knowingly devised, intended to devise, and carried out a scheme . . . to obtain money or property by means of materially false and fraudulent pretenses, representations, and promises" (see id. at 3:5-7), and that, as "part of the scheme to defraud," he engaged in the following acts: (1) he "fraudulently placed a signature on a Term Sheet that purported to indicate a large publicly-traded corporation was interested in purchasing Bouxtie at a price of $150,000,000" and gave it to Moose Run (see id. at 3:16-20), (2) he "caused a bank statement to be transmitted to . . . Moose Run, which statement purported to show that Bouxtie had over $2,000,000 in its bank account" when, "[i]n fact," the balance was $7642.82 (see id. at 3:21-24), and (3) he "fraudulently placed the signatures of members of Bouxtie's Board of Directors on a document entitled 'Corporate Resolution of Bouxtie, Inc.'" that "purportedly authorized [him] to enter into agreements with Moose Run, under which Moose Run would lend Bouxtie $1,500,000"

---

[3]The parties, in their respective written submissions in support of and in opposition to the motion, cite to and rely on several filings in United States v. Libric, CR 18-00196 MMC. Under such circumstances, the Court takes judicial notice of the filings in said criminal action. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (holding "court may take judicial notice of matters of public record") (internal quotation and citation omitted); Minor v. FedEx Office & Print Services, Inc., 182 F. Supp. 3d 966, 974 (N.D. Cal. 2016) (noting "[p]roper subjects of judicial notice include court documents in the public record").

(see id. at 3:25-27). Libric also admitted that, after Moose Run "receiv[ed]" the above-described "representations," Moose Run "caused a wire in the amount of $1,500,000 to be transmitted . . . to Bouxtie's account." (See id. at 4:3-7.)

On December 19, 2018, the Court conducted a sentencing and restitution hearing, at which time two representatives of Moose Run appeared and made statements. At the hearing, the Court sentenced Libric to a term of thirty-six months in prison, to be followed by three years of supervised release, and, in addition, ordered Libric to pay restitution to Moose Run in the amount of $1,520,074.[4] On December 21, 2018, the Clerk of Court entered judgment in accordance therewith. No appeal was filed.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Where, as here, the moving party "bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial." See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (internal citation and quotation omitted). Once the moving party meets his initial burden, "the burden shifts to [the non-movant] to set forth specific facts" to show a triable issue of fact exists. See id. at 1537.[5]

//
//

---

[4] As explained by the government in its sentencing memorandum, Moose Run, in addition to transferring the sum of $1,500,000 to Bouxtie, "incurred $20,074 in reimbursable expenses." (See United States v. Libric, United States' Sentencing Mem., Doc. No. 24, at 7:7-14.)

[5] Libric is a prisoner who, as noted, proceeds pro se. In conformity with the Ninth Circuit's directive that district courts must provide all pro se prisoners, including defendants, with "fair notice of the requirements of the summary judgment rule," see Securities and Exchange Commission v. Nite, 207 F.3d 1134, 1135, the Court, on December 17, 2019, provided Libric with such notice. (See Order Providing Def. with Notice of the Requirements of Rule 56.)

4

**DISCUSSION**

Moose Run argues that, under the doctrine of collateral estoppel and in light of the admissions made by Libric in United States v. Libric, it is entitled to judgment in its favor as to its claims.

The Court considers in turn the claims alleged in the complaint

**A. First Cause of Action:  Fraud/False Promise**

In the First Cause of Action, Moose Run alleges Libric made knowingly false representations to Moose Run to induce it to transfer the sum of $1,500,000 to Bouxtie, that Moose Run did transfer said amount to Bouxtie, and that it received none of the benefits promised.  (See Compl. ¶¶ 11-23, 37, 46-49.)  Moose Run argues each of the facts on which it bases its fraud claim was decided in United States v. Libric, and, consequently, that those determinations are conclusive in the above-titled action.

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Montana v. United States, 440 U.S. 147, 153 (1979).  Collateral estoppel may be raised by a party in the second action who was not a party to the first action, see Parklane Hosiery Co. v.  Shore, 439 U.S. 322, 324-25, 332-33 (1979) (holding defendants in private securities fraud action were collaterally estopped from denying statements made to investors were false, where fact of falsity had been established against them in earlier civil action filed by Securities and Exchange Commission), and may be based on findings made in a criminal case, see Ivers v. United States, 581 F.2d 1362, 1367 (9th Cir. 1978) (holding defendant in civil forfeiture action was collaterally estopped from denying he was unaware of law requiring him to declare currency when entering country, where he admitted to such knowledge in prior criminal action in which he pleaded guilty to willful failure to report currency when entering country).

Here, the issue presented is whether facts necessary to establish Moose Run's fraud claim were actually and necessarily determined in United States v. Libric.

To establish a fraud claim, the plaintiff must establish the following five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." See Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996). In his Plea Agreement, Libric admitted facts that establish each of those elements; specifically, he admitted (1) he made false representations to Moose Run, (2) he knew the representations were false, (3) he made the representations with the intent of defrauding Moose Run by causing it to transfer money to Bouxtie, (4) Moose Run, after receiving the false representations, "caused a wire in the amount of $1,500,000" to be sent to Bouxtie, and (5) Moose Run incurred losses of "no less than" $1,500,000, which losses were "caused" by Libric's "fraudulent" scheme. (See United States v. Libric, Plea Agreement, Doc. No. 17 at 3-4, 6.) Additionally, as noted, the Court, at the restitution hearing, found Moose Run was a victim entitled to restitution in an amount in excess of $1,500,000.

As a judgment may not be entered on a guilty plea unless the district court "determine[s] that there is a factual basis for the plea," see Fed. R. Crim. P. 11(b)(3), the admissions by Libric that he made knowingly false representations to Moose Run, that he intended to defraud Moose, and that Moose Run used a wire to transfer funds to Bouxtie were necessary to support the conviction. See United States v. Pelisamen, 641 F.3d 399, 409 (9th Cir. 2011) (holding "elements of wire fraud" are "the existence of a scheme to defraud," the "specific intent to defraud," and "the use of wire . . . to further the scheme"); Carpenter v. United States, 484 U.S. 19, 28 (1987) (holding element of use of wire satisfied where victim's use of wire was "essential part of the scheme"). Additionally, as an award of restitution requires a finding that the victim was "directly and proximately harmed as a result of the commission of [the] offense," see 18 U.S.C. § 3663A(a), Libric's admission that Moose Run was harmed by the scheme in an amount of at least $1,500,000 was necessary to support the restitution award.

//

Accordingly, the facts on which Moose Run bases its fraud claim having been actually and necessarily decided in United States v. Libric, the Court finds Moose Run has met its initial burden to show it is entitled to judgment on the First Cause of Action in the amount sought, $1,500,000.

The Court next considers whether Libric, in his opposition, has met his burden to establish a triable issue of fact or to otherwise show a basis for finding Moose Run is not entitled to summary judgment on its fraud claim. See Houghton, 956 F.2d at 1537. In that regard, Libric, noting the judgment entered in United States v. Libric included an award of restitution to Moose Run, concludes Moose Run's request for an award of damages is "moot." (See Def.'s Opp. at 4.) Although not clearly expressed, the Court understands Libric to be arguing that where a crime victim is awarded restitution in a criminal case, the victim may not bring a civil action seeking to recover for the same loss. Libric fails, however, to cite any authority so holding, and the Court has located none. Moreover, as Moose Run points out, 18 U.S.C. § 3664 provides that the amount awarded as restitution to a victim in a criminal proceeding "shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding" or "any State civil proceeding." See 18 U.S.C. § 3664(j)(2). If a victim who is awarded restitution would, by reason of such award, be barred from seeking to recover a civil remedy for the same loss, § 3364(j)(2) would be rendered a "nullity," a result contrary to "the rule that [a] statute[ ] should not be construed in a manner which robs specific provisions of independent effect." See In re Cervantes, 219 F.3d 955, 961 (9th Cir. 2000). Consequently, Libric has failed to establish a triable issue of fact or to otherwise show Moose Run is not entitled to summary judgment as to the fraud claim.

Accordingly, the Court finds Moose Run is entitled to judgment in its favor on the First Cause of Action.

The Court next considers whether Moose Run is entitled to the additional relief it seeks, specifically, an award of prejudgment interest.

7

Moose Run, in its moving papers, argues it is entitled to prejudgment interest "using the interest rate specified for postjudgment interest -- the one-year constant maturity Treasury yield." (See Pl.'s Mot. at 10:9-10.) In support of this argument, Moose Run cites to authority addressing the circumstances under which a plaintiff who prevails on a federal maritime claim is entitled to prejudgment interest. See Western Pacific Fisheries, Inc. v. SS President Grant, 730 F.2d 1280, 1289 (9th Cir. 1984) (holding it is "well-established that compensatory damages in maritime cases normally include pre-judgment interest"; finding award of prejudgment interest, using rate applicable to postjudgment interest, proper under circumstances presented). As Moose Run's fraud claim arises under state law, however, state law controls, see In re Exxon Valdez, 484 F.3d 1098, 1101 (9th Cir. 2007) (holding, "[i]n diversity jurisdiction, state law governs all awards of prejudgment interest") (internal quotation and citation omitted), and Moose Run fails to argue in its moving papers, let alone show, it is entitled to prejudgment interest under state law.[6]

Accordingly, Moose Run has failed to show it is entitled to summary judgment on its request for an award of prejudgment interest.

**B. Other Causes of Action**

As noted, Moose Run seeks summary judgment on all of the claims asserted in its complaint. As set forth below, the Court finds Moose Run has not shown it is entitled to summary judgment on any claim other than its fraud claim.

At the outset, the Court notes that, under California law, an "Unjust Enrichment" claim, such as that brought here as the Sixth Cause of Action, is not actually a cause of action. See McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004) (characterizing unjust enrichment as "a general principle underlying various legal doctrines and

---

[6] In its reply, Moose Run argues it is entitled to an award of prejudgment interest under California law. As Moose Run first raised this argument in its reply, the Court has not considered it herein. See, e.g., Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 843 n.6 (9th Cir.2004) (refusing to consider argument raised for the first time in reply because opposing party had no opportunity to respond).

1    remedies") (internal quotation and citation omitted).  A cause of action titled "unjust
2    enrichment," however, can be construed as a claim that the plaintiff is entitled to
3    restitution under the theory "the defendant obtained a benefit from the plaintiff by fraud."
4    See id. at 388.  To proceed on such a construction, the plaintiff "choose[s] not to sue in
5    tort, but instead to seek restitution on a quasi-contract theory (an election referred to at
6    common law as waiving the tort and suing in assumpsit)."  See id.  Here, however,
7    Moose Run did not "waiv[e] the tort," but, rather, chose to "sue in tort," see id., by
8    proceeding with its fraud claim.  Under such circumstances, Moose Run has not shown it
9    is entitled to summary judgment on its "duplicative" claim for "unjust enrichment."  See In
10   re Apple and AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D.
11   2011) (holding "plaintiffs cannot assert unjust enrichment claims that are merely
12   duplicative of statutory or tort claims"; dismissing duplicative claim for unjust enrichment)
13   (citing cases).
14            As to the remaining Causes of Action, Moose Run has not offered evidence to
15   establish that each essential fact alleged in support of those claims was actually and
16   necessarily determined in United States v. Libric, or that Moose Run is otherwise entitled
17   to summary judgment.  Indeed, Moose Run fails to expressly address any of those claims
18   in its motion.
19            Accordingly, as to the Second through Seventh Causes of Action, Moose Run has
20   not shown it is entitled to summary judgment.

**CONCLUSION**

22            For the reasons stated above, Moose Run's motion for summary judgment is
23   hereby GRANTED in part and DENIED in part, as follows:
24            1. To the extent Moose Run seeks summary judgment on its First Cause of
25   Action, the motion is GRANTED, and Moose Run is awarded damages thereon in the
26   amount of $1,500,000.
27   //
28   //

1     2. In all other respects, the motion is DENIED.

2     **IT IS SO ORDERED.**

4 Dated: June 18, 2020                    _____
MAXINE M. CHESNEY
United States District Judge